UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY JEFFERS,

                            Plaintiff,

v.                                                      9:99-CV-0335 (FJS/GHL)

GLENN S. GOORD, *et al.*,

                            Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

GOLDING & ASSOCIATES                  KEVIN S. GOLDING, ESQ.
Attorneys for Plaintiff
299 Broadway, Suite 710
New York, New York 10007

HON. ELIOT L. SPITZER                    MARIA MORAN, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for the Defendants
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455

GEORGE H. LOWE, UNITED STATES MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

     This action has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, United States District Judge, pursuant to Local Rule 72.3(c) and 28 U.S.C. § 636(b).

     On August 1, 2002, plaintiff, Jeffery Jeffers ("plaintiff"), filed an amended complaint in this action, alleging claims pursuant to 42 U.S.C. § 1983 against the following seven individuals: (1) Michael LaDue, a sergeant at Watertown Corrections Facility; (2) Clint Loren, a corrections officer (apparently at Watertown Corrections Facility); (3) Randy Hanson, a corrections officer (apparently at Watertown Corrections Facility); (4) Anne Eckert, the nurse administrator at the

1

Ulster Correctional Facility; (5) Marge Barnes, the nurse administrator at the Downstate Correctional Facility; (6) John Doe, a sergeant at the Watertown Correctional Facility; and (7) John Doe, a corrections officer at the Watertown Correctional Facility. (Dkt. No. 50.) All seven of these defendants are the subject of this Report-Recommendation.

Defendants LaDue, Loren and Hanson each filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), or in the alternative a motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. Nos. 72-77.)[1] Defendants Eckert and Byrnes each filed their own motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).[2] (Dkt. Nos. 79, 81.) The two John Doe defendants have not yet been identified by plaintiff; consequently, they have not been served. Plaintiff has opposed all motions made by the five named defendants over whom jurisdiction was obtained.

For the reasons that follow, I recommend that the Court *sua sponte* dismiss with prejudice the claims against the two John Does. I also recommend that Defendants LaDue, Loren, and Hanson's motions for summary judgment be granted in part and denied in part. Further, I recommend that Defendants Byrne and Eckert's motions to dismiss be granted. Finally, I recommend that a converted motion to dismiss for Defendants LaDue, Loren, and Hanson be granted.

---

[1] Although defendants' motion is labeled as a motion for summary judgment only, it clearly contains a request that the complaint be dismissed for failure to state a claim pursuant to Rule 12(b)(6). (Dkt. No. 75 at 7-10.) Therefore, it shall be construed as such. *See infra* page 4.

[2] Defendant Byrne's motion relies also on Rule 12(b)(3) as a basis for dismissal, arguing that the Northern District is not the proper venue for an alleged act which occurred in the Southern District of New York. Footnote "11" addresses this issue.

## **BACKGROUND**

Generally, plaintiff alleges the following facts in his Amended Complaint. Between August 31, 1998, and September 1, 1998, he was transported by bus from Riverview Correctional Facility to Elmira Correctional Facility. (Dkt. No. 50, ¶ 1.) His transfer route made a number of stops at various Correctional Facilities ("C.F."), on the way to Elmira C.F. (*Id*. at ¶ 2.) Defendants LaDue, Loren, and Hanson accompanied plaintiff from Watertown C.F., the second stop on the transfer, to Oneida C.F., the third stop. (*Id*. at ¶¶ 2, 4.) Plaintiff alleges that, during this particular leg of the transfer, Defendants LaDue, Loren, and Hansen handcuffed him too tightly, causing swelling, abrasions, and bleeding. (*Id*. at ¶¶ 2-3.) Plaintiff alleges that he requested that the handcuff tension be loosened to ease the pain during the Watertown C.F. to Oneida C.F. leg of the transfer. (Dkt. No. 50, ¶ 3.) He alleges that Defendants LaDue, Loren and Hanson refused his requests during the trip and while at Oneida C.F. (*Id.* at ¶¶ 3-4.)[3] Plaintiff further alleges that during stopovers at Ulster C.F., where Defendant Eckert was the nurse administrator, and Downstate C.F., where Defendant Byrnes was the nurse administrator, his requests for medical care were denied. (Dkt. No. 50 at ¶¶ 14, 16.)[4]

Plaintiff alleges the following causes of action: (1) a negligence cause of action against Defendants LaDue, Loren, and Hanson for handcuffing his wrists too tightly, causing injury (Dkt.

---

[3]  Defendants deny that plaintiff requested loosening. (Dkt. No. 77, Aff. ¶ 9, Exs. 1-2.)

[4]  Paragraph 14 of plaintiff's Amended Complaint alleges that, "[h]aving had the handcuffs removed by the unknown officer referred to in paragraph 8 above, he was denied his request for medical attention by Sargent [sic] LaDue and or all Defendants." (Dkt. No. 50, ¶ 14.) However, paragraph eight contains no such allegation of removal of handcuffs or denial of medical attention; it is merely a statement that the plaintiff suffered damages. (*Id*. at ¶ 8.) I have construed plaintiff to mean paragraph six where it is alleged that the handcuffs were removed. (*Id*. at ¶ 6.)

No. 50); (2) two negligence causes of action against the same three defendants for their alleged refusal to ease the handcuff tension (*id.* at ¶¶ 3, 10); and (3) an Eighth Amendment cause of action against all defendants for their refusal to provide him with prompt medical care for his injuries (*id.* at ¶ 14). Plaintiff seeks monetary relief in the form of compensatory and punitive damages against Defendants LaDue, Loren, and Hanson. (Dkt. No. 50, *ad damnum* clause.) Plaintiff has failed to request any specific relief from the other four defendants.

On August 25, 2003, all five defendants over whom plaintiff was able to obtain jurisdiction filed various motions for summary judgment or dismissal. Defendants Byrnes and Eckert's motion to dismiss assert that plaintiff fails to state a cause of action. Defendants LaDue, Loren, and Hanson's summary judgment motion argues that (1) plaintiff failed to exhaust the required administrative remedies, (2) the Eleventh Amendment bars suits against state actors while acting in their official capacities, and (3) plaintiff failed to state a cause of action in his amended complaint. (Dkt. No. 75, at 4, 6, 7.)

Defendants' third argument is better characterized and treated as two separate arguments. (Dkt. No. 75 at 7-10.) First, defendants argue that summary judgment is appropriate for the Eighth Amendment medical indifference claim, because there is no genuine question of material fact regarding the alleged medical indifference. (*Id.*) Second, defendants argue that the negligence claims should be dismissed, since it is not a claim for which relief may be granted. Because judgment, summary or otherwise, cannot be rendered where no claim has been stated, the negligence claims' argument is more properly a motion to dismiss, and shall be construed as such. (*Id.*)

After denying plaintiff's counsel's motion to withdraw on May 5, 2004, I ordered counsel to respond to defendants' motions by June 18, 2004. (Dkt. No. 94.) Plaintiff's attorney received

an extension and order to respond to the motions by August 2, 2004. (Dkt. No. 97.) On August 20, 2004, after having failed to respond as ordered, plaintiff's attorney received another extension ordering a response by September 16, 2004. (Dkt. No. 98.) Plaintiff's attorney finally complied with the court's order and responded to the motions on September 21, 2004. (Dkt. Nos. 99-101.) Plaintiff's attorney failed, however, to comply with Local Rule 7.1(a)(3) and did not submit a response to defendants' Statement of Material Facts. Further, plaintiff's counsel did not submit a signed, notarized affidavit from plaintiff. Plaintiff's attorney submitted an attorney's affirmation that the alleged facts set forth in plaintiff's unsigned affidavit were true in so far as they reflected the information contained in the attorney's file. (Dkt. No. 101.)

## DISCUSSION

**I.   FAILURE TO PROSECUTE WITH RESPECT TO THE JOHN DOE DEFENDANTS**

    **A.   Legal Standard**

Rule 41(b) of the Federal Rules of Civil Procedure provides that a defendant may move for dismissal of an action for a plaintiff's failure to prosecute or comply with a court order. FED. R. CIV. P. 41(b); *see also* N.D.N.Y. L.R. 41.2(a). However, a court does not have to wait for defendants' motion, but instead may act *sua sponte*. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1967); N.D.N.Y. L.R. 41.2(a). A dismissal is "justified for [plaintiff's] failure to prosecute at all." *Chira v. Lockheed,* 634 F.2d 664, 667 (2d Cir. 1980). "This [C]ourt is vested with broad discretion in determining whether to dismiss an action . . . for failure to prosecute." *S.E.C. v. Everest Mgmt. Corp.,* 466 F. Supp. 167, 171 (S.D.N.Y. 1979); *Ali v. A & G Co.*, 542 F.2d 595, 596 (2d Cir. 1976); *Joseph Muller Corp. Zurich v. Societe Anonyme De Gerance Et D'Armement*, 508 F.2d 814, 815 (2d Cir. 1974).

### B. The John Doe Defendants

Plaintiff originally filed his verified *pro se* complaint on November 30, 1998. (Dkt. No. 1.) On August 1, 2002, plaintiff's attorney filed an amended unverified complaint including the unidentified John Doe defendants. (Dkt. No. 50.) On March 31, 2004, I ordered plaintiff to "take reasonable and expeditious steps to ascertain [the identity of the John Doe defendants] and then request the Court's permission to file a motion to amend seeking leave of the Court to bring the named individuals into this action." (Dkt. No. 93 at 3.) It has been six years since the filing of the original complaint (Dkt. No. 1 [filed on 03/05/99]) and plaintiff has made no progress or apparent efforts in identifying the John Does. Further, plaintiff's counsel has a history of non-prosecution of this case even with regard to the known defendants, as evidenced by his numerous extension requests. (Dkt. Nos. 30, 41, 64, 97.)[5] Therefore, I recommend that the court *sua sponte* dismiss with prejudice the claims against the two John Doe defendants.

## II. MOTION TO DISMISS OR IN THE ALTERNATIVE A MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS LADUE, LOREN, AND HANSON

### A. Legal Standard

In lieu of an answer, Defendants LaDue, Loren, and Hanson have submitted a motion to dismiss or in the alternative a motion for summary judgment. The standard for a motion to dismiss is described below in Part III of this Report-Recommendation. A motion for summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gijvoje*, 896 F.2d 716, 720 (2d

---

[5] Additionally, plaintiff's response to the motions currently under consideration was late, it cited New York State authority which is not binding on this Court, and it lacked a response to defendants' Statement of Material Facts, which is required under Local Rule 7.1.(a). Further, plaintiff's counsel seems to have spent greater effort in his failed attempt to secure his own removal from the case rather than he has in prosecuting it.

Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 477 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ross v. McGinnis*, 00 Civ. 0275E, 2004 WL 1125177, *8 (W.D.N.Y. 2004) (internal quotations omitted). The nonmoving party must show that there are specific factual issues that can only be resolved by trial. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995). A fact is material only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

Defendants argue that the Eleventh Amendment bars claims against state actors acting within their official capacities; that plaintiff's failure to exhaust his administrative remedies requires judgment in favor of defendants; and that the medical indifference claim cannot survive since there is no genuine issue of material fact.

### B. The Eleventh Amendment

Defendants LaDue, Loren, and Hanson have moved for summary judgment on the basis that the Eleventh Amendment bars suits against state actors acting in their official capacities. *See* U.S. Const. amend. XI; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir. 1993); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988). "The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his

official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, at 529 (2d Cir. 1993); *see, e.g., Kentucky v. Graham,* 473 U.S. 159, 166-67 (1985). "As to a claim brought against him in his individual capacity, however, the state official has no Eleventh Amendment immunity." *Ying Jing Gan*, 996 F. 2d at 529; *see also Scheuer v. Rhodes,* 416 U.S. 232, 238 (1974) (Eleventh Amendment does not bar award of damages to be paid not from the state treasury but from the official's personal funds). I recommend that defendants' motion for summary judgment be granted as to Defendants LaDue, Loren, and Hanson in their official capacities.

    C.    **Exhaustion of Administrative Remedies**

Defendants LaDue, Loren, and Hansen request relief in the form of summary judgment for plaintiff's failure to exhaust the available administrative remedies. (Dkt. No. 75.) The Second Circuit has recently held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and

some of the defendants did not forefeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. (citations and internal quotations omitted).

Here, plaintiff's Memorandum of Law asserts that he exhausted all remedies that were in fact available to him. (Dkt. No. 101 at 5.) The history of plaintiff's grievance is as follows.

On September 14, 1998, plaintiff filed an initial grievance, EL19-034-98, at Elmira C.F. (Dkt. No. 76, Ex. D, at 3-4.) On October 1, 1998, IGRC representative John Gold wrote a memorandum to Elmira C.F. Superintendent Bennett informing him that Gold told plaintiff to forward his concerns to the Superintendent, since the subject of the grievance did not occur at Elmira C.F. and the IGRC lacked the ability to investigate the grievance. (*Id*. at 10.) By an undated form, plaintiff requested that his grievance be passed through to the Superintendent. (*Id*. at 11.) In a memorandum dated October 9, 1998, Elmira C.F. First Deputy Superintendent Dana M. Smith responded to plaintiff's undated request by reporting that his grievance would be closed and dismissed. (*Id*. at 13.) Plaintiff was also directed in that memorandum to file a grievance with the Watertown C.F. and/or the Downstate C.F.–depending on whose staff allegedly injured plaintiff. (*Id*.) On October 12, 1998, plaintiff wrote a letter requesting a copy of his grievance. (*Id*. at 12.) On October 18, 1998, he received a copy of the grievance and response from IGRC stating that plaintiff's grievance is "[g]ranted to the extent that Grievant is directed to forward matter to relevant Watertown facility." (*Id*. at 2.)

Plaintiff filed suit on November 30, 1998, before his conditional release on December 11, 1998. The record reflects that October 19, 1998, was the last date of any activity regarding his grievance. The defendants argue that a grievant may appeal a superintendent's determination to

the CORC. (Dkt. No. 75 at 5.) The defendants further argue that--because plaintiff did not appeal the Elmira C.F.'s IGRC decision to CORC--plaintiff failed to exhaust his administrative remedies. (Dkt. No. 75 at 6.)

In response, counsel for plaintiff argues, "In this case, plaintiff has exhausted all his administrative remedies but was released before sending it [sic] to the central office. It took him over three months sending the grievances back and forth to Watertown and Elmira. He was released before a CORC decision was made on his behalf therefore, [sic] his only recourse is to file suit in federal court." (Dkt. No. 101 at 6.)

There exists a serious question as to whether administrative remedies (whether by appealing to CORC or filing his grievance at Watertown C.F.) were "available" to plaintiff prior to his conditional release to parole. As stated above, administrative remedies are exhausted when a prisoner-plaintiff pursues all remedies *available* to him at the time. *See*, *e.g.*, *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) (failure by prison to implement prior grievance rulings in plaintiff's favor rendered plaintiff's administrative remedies "unavailable"). For example, "a remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under [the Prison Litigation Reform Act]." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (cited with approval in *Abney*, 380 F.3d at 669).

Prison officials may "prevent" a prisoner from utilizing a remedy by incorrectly representing to the prisoner that his complaint is not grievable, or that it is grievable only through another avenue. *See Brown v. Croak*, 312 F.3d 109, 112-113 (3d Cir. 2002) (assuming that plaintiff was incorrectly instructed by prison officials that he could not file a grievance, "the formal grievance proceeding required by [the prison grievance system] was never 'available' to [plaintiff] within the meaning of [the PLRA]") (cited in *Giano v. Goord*, 380 F.3d 670, 677 n.6

[2d Cir. 2004]); *O'Connor v. Featherston*, 01-CV-3251, 2002 WL 818085, *2 (S.D.N.Y. Apr. 29, 2002) ("In light of [apparent former-defendant] McGinnis's suggestion that O'Connor follow-up his claims through the Inspector General's Office, rather than pointing him to the grievance procedures, the [other] defendants cannot be heard to argue that O'Connor's claims are nevertheless dismissed for failure to exhaust the grievance procedures." ).

Such prison officials need not be defendants. *See Brown*, 312 F.3d at 112-113 (prison officials were not defendants but "officials in the security department of the prison"); *Hemphill*, 380 F.3d at 686 (citation omitted) (basing first prong of three-prong exhaustion analysis on whether "administrative remedies were in fact 'available' to the prisoner,' not on preclusive effect of defendants' conduct, which is basis of second prong).

Probably because the Second Circuit's five exhaustion cases are so recent (filed on August 18, 2004), there does not yet appear to be any cases from within the Second Circuit standing for the (rather basic) proposition that misleading representations by even non-parties could render a prisoner's administrative remedies "unavailable." However, cases from before August of 2004–which fit such representations into the most relevant exhaustion exception then available (estoppel)--recognize that representations by non-defendants could negatively affect defendants.[6] At the very least, these cases suggest that a defendant may be estopped by a

---

[6]     *See Heath v. Saddlemire*, 2002 WL 31242204, *4-5 (N.D.N.Y. Oct. 7, 2002) (denying motion for summary judgment in part because plaintiff was "excused" from failing to exhaust where the "State Commission of Correction"–which was not a named defendant– incorrectly advised plaintiff by letter that he was following the "correct procedure" for pursuing his grievance); *Davis v. Frazier*, 98 Civ. 2658, 1999 WL 395414, *4 (S.D.N.Y. June 15, 1999) (denying motion for summary judgment in part because non-defendant prison officials at an orientation session upon admission routinely informed plaintiff that "a grievance cannot be brought against Officers or Staff").

-11-

representation of someone other than himself.[7]  The rest of the cases I have found are unclear about whether the representations came from non-defendants or defendants.[8]

Here, it appears that the Elmira C.F. I.G.R.C. and Superintendent misled plaintiff into believing that he could not pursue his grievance at Elmira C.F.  New York State regulations clearly provide that "[a grievance] complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility."  7 NYCRR § 701.7(a)(1).  *See*, *e.g.*, *Soto v. Belcher*, 339 F. Supp.2d 592, 595 (S.D.N.Y. 2004) ("[T]he IGP would have been available [regarding plaintiff's claim pertaining to his former facility] immediately upon [plaintiff's] arrival at Fishkill [Correctional Facility].").  Watertown C.F. could easily have cited 7 NYCRR 701.7(a)(1) in refusing to entertain plaintiff's grievance, leaving plaintiff without a remedy.  Apparently realizing this fact, defendants argue–not that plaintiff should have re-filed his grievance at Watertown C.F. (which he apparently never did)–but that he never appealed the Elmira C.F.'s IGRC decision to CORC.

There are two problems with this argument.  First, the Elmira C.F.'s IGRC decision indicated that plaintiff's grievance was "granted."  As a result, plaintiff could have reasonably believed there was nothing to appeal.  Second, it would not make sense to require a grievant who

---

[7]    *See O'Connor*, 2002 WL 818085 at *2.

[8]    *See Darling v. Chautauqua County Jail*, 00-CV-0187, 2004 WL 1906870, *1-2 (W.D.N.Y. Aug. 25, 2004) (denying motion for summary judgment in part because question of fact existed about whether "prison officials" had incorrectly informed plaintiff that certain of his claims were not grievable); *Kendall v. Kittles*, 00-CV-628, 2004 WL 1752818, *4 (S.D.N.Y. Aug. 4, 2004) (denying motion for summary judgment in part because question of fact existed about whether various "corrections officials" had incorrectly informed plaintiff that his complaints were not grievable); *Feliciano v. Goord*, 97 Civ. 263, 1998 WL 436358, *2 (S.D.N.Y. July 27, 1998) (denying motion to dismiss in part because "prison officials," among other things, informed plaintiff that his complaint of attacks by another prisoner was not a grievable matter but "a security matter," and they never informed plaintiff of when an alleged investigation of the matter was over).

has reasonably relied to his detriment on false advice regarding his available administrative remedies to complain to CORC about that advice, since such a complaint would presume that the grievant knew the advice was false–in which case he would not have been relying to his detriment on that advice. Stated another way, if false advice renders a remedy unavailable, that remedy need not be exhausted at all (i.e., by appeal).

As a result, summary judgment or dismissal for failure to exhaust is inappropriate. Therefore, I recommend that the motions by Defendants LaDue, Loren, and Hansen for summary judgment on the basis of failure to exhaust be denied.

### D. Eighth Amendment Claim

Plaintiff's Eighth Amendment claim alleges a denial of necessary medical care. To elevate the deprivation of medical care to the level of a constitutional violation, plaintiff must show deliberate indifference by each defendant to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To establish a case of such indifference, plaintiff must set forth enough facts to satisfy a two-prong test. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). The Supreme Court established this well-settled objective-subjective test in *Farmer v. Brennan*, 511 U.S. 825 (1994).

Under the first prong, the deprivation, when objectively viewed, must be "sufficiently serious." *Farmer*, 511 U.S. at 834. A sufficiently serious deprivation is the result of a "denial of the minimal civilized measures of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). "A plaintiff must allege that his access to physicians for **necessary** medical care was unreasonably delayed or denied, or that prescribed medical treatment was not administered." *Murphy v. Grabo*, No. 94-1684, 1998 WL 166840, *4 (N.D.N.Y. Aug. 3, 1995) (citations omitted) (emphasis added). Incarceration is not an entitlement to more than the minimal

civilized standards of life's necessities. "[T]he Government need not promise or guarantee equal resources so long as it appears reasonably probable . . . that there will be adequate resources." *U.S. v. King*, 442 F. Supp. 1244, 1248-49 (S.D.N.Y. 1978). "[T]hough it is plain that an inmate deserves *adequate* medical care, he cannot insist that his institutional host provide him with the most sophisticated care money can buy." *U.S. v. DeCologero*, 821 F.2d 39, 42 (1st Cir. 1989).

The second prong, which is subjective, requires the prison official to have a sufficiently culpable state of mind, defined as "deliberate indifference." *Farmer,* 511 U.S. at 834. "It is . . . fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. Such recklessness encompasses a state of mind where the defendant knew and disregarded an excessive risk to the plaintiff's health or safety. *Id.* at 837.

Here, plaintiff described his injuries in the amended complaint as bleeding and swollen hands, and the inability to eat lunch because his hands hurt. (Dkt. No. 50, ¶ 5.) The record reflects that plaintiff only needed bandages and ointment to treat his injuries. (Dkt. No. 76, Ex. D.) Moreover, the record reflects that he required no follow-up care for his injuries. (*Id.*) From the evidence available on the record, plaintiff's injuries appear to have been superficial in nature.[9]

*Even if* plaintiff's injuries were serious, he must then have been deprived by defendants of the care *necessary* to treat the serious injury. According to his amended complaint, he first requested medical care at Ulster C.F.. (Dkt. No. 50, at ¶¶ 3, 4, 6, 14. ) Defendants'

---

[9] There are allegations within the record that photographs of plaintiff's injuries were taken upon his arrival at Elmira C.F. (Dkt. No. 50, ¶18.) However, plaintiff's attorney failed to submit such photographs, and without them the Court may only consider the verbal descriptions and medical documents contained within the record.

uncontroverted Statement of Material Fact attests that Defendants LaDue, Loren, and Hanson accompanied plaintiff only on the leg of the trip from Watertown C.F. directly to Oneida C.F., and were not present during his requests for medical care, an assertion amply supported by the record. (*Compare* Dkt. No. 74 *with* Dkt. No. 77, Exs. 1, 2.)[10]  Ulster C.F. is the next leg of the transfer. It obviously would have been impossible for Defendants LaDue, Loren, and Hanson to deny plaintiff medical care at Ulster C.F. if they were not present during that alleged deprivation. While there are additional allegations throughout the amended complaint of a denial of medical care from the Ulster C.F. leg of his transportation to the final destination of Elmira C.F., plaintiff never indicates who denied him this care. (Dkt. No. 50 at ¶¶ 15-19.)

Simply stated, Defendants LaDue, Loren, and Hanson did not deny the claimed medical care since they were not present when it was allegedly requested. In addition, plaintiff's injuries based on the record were superficial in nature. Plaintiff is unable to meet either prong of the conjunctive *Farmer* test. There remains no question of material fact and I, therefore, recommend granting the motion of Defendants LaDue, Loren, and Hansen for summary judgment with regard to the Eighth Amendment claim.

---

[10] *See* Local Rule 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>."); *Mehlenbacher v. Slafrad, et al.*, No. 9:99-CV-2127, 2003 U.S. Dist. LEXIS 9248, *4 (N.D.N.Y. June 4, 2003); *Adirondack Cycle & Marine, Inc. v. American Honda Motor Co., Inc.*, No. 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, *2-3 (N.D.N.Y. Mar. 18, 2002); *Allen*, 140 F. Supp.2d at 232.

### III.   MOTIONS TO DISMISS

#### A.   Legal Standard

In ruling on a motion to dismiss, the court must accept the material facts as alleged in plaintiff's complaint as true and must draw all reasonable inferences in favor of the non-movant. *Patel v. Searles*, 305 F.3d 130, 134-35 (2d. Cir. 2002) (citing *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 99 [2d Cir. 2001]).  A court may properly dismiss a complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  A complaint may be dismissed when it constitutes no more than general and conclusory allegations that defendants denied plaintiff's constitutional rights.  *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987).  Rule 8(a)'s standard of a plain and simple statement does require some basics: who violated the plaintiff's rights, when, by what means, and how the violation harmed him.  *Phelps v. Kapnolas*, 308 F.3d 180, 187 n.6 (2d. Cir 2002).

#### B.   Defendants Byrnes and Eckert

I recommend that the action against Defendants Byrnes and Eckert be dismissed with prejudice.  While this Court must accept the material facts as alleged in plaintiff's complaint as true, a prerequisite to that acceptance is that allegations first must be made against a defendant.  Simply listing defendant's name upon the caption and obtaining service of process over her are not enough.

In plaintiff's amended complaint, he fails to allege any material facts regarding Defendants Byrnes and Eckert which can be construed as a cause of action.  In paragraph 14, he makes a vague reference to "and or all Defendants," but he fails to plead when and by what means his rights were violated by either Defendant Byrnes or Eckert.  (Dkt. No. 50.)  This

artlessly drafted pleading makes no actual factual allegations upon which the Court may draw any inferences at all, favorable or otherwise, for the non-moving plaintiff. The denial of necessary medical care by all defendants as a violation of the plaintiff's Eighth Amendment rights is conclusory at best.

Plaintiff's abstruse response to defendants' motion fails to assert that he even spoke with or had any other contact with either Defendant Byrnes or Defendant Eckert that resulted in an unwarranted denial of medical care.

Specifically, with regard to Defendant Byrnes, plaintiff implicitly acknowledges that Byrnes lacked any knowledge of plaintiff's medical condition or needs. In the amended complaint, he asserts that "the defendants" refused to notify the correctional staff at Downstate C.F. of his need for medical care. (Dkt. No. 50, ¶ 16.)  Byrnes was a member of that uninformed staff. Plaintiff's unsigned, unsworn affidavit alleges that Byrnes "is and was the nurse administrator at Downstate Correctional Facility. When I arrived there I requested medical attention for my injuries and was denied." (Dkt. No. 99, Unsworn Affid. at ¶ 8.)  However, plaintiff never alleges, in either his amended complaint or unsworn affidavit, that Byrnes was present, let alone that she actually denied him medical care. Plaintiff argues in his Memorandum of Law that the complaint asserted a cause of action against Byrnes for her supervisory role. There is no such claim plead in the amended complaint. (*Compare* Dkt. No. 99, Mem. of Law at 2 *with* Dkt. No. 50.)

Plaintiff's unsigned, unsworn affidavit alleges that Defendant Eckert "is and was the nurse administrator at Downstate C.F. At Ulster after the handcuffs were removed . . . I requested medical attention and was denied. My request for bandages to cover my wounds was also denied." (Dkt. No. 100, Unsworn Affid. at ¶ 7.)  Assuming that the allegation of Eckert as a

Downstate C.F. employee is a typographical error, plaintiff still fails to assert whom he asked for aid. *See Phelps*, 308 F.3d at 187 n.6. As with Defendant Byrnes, I am unable to tell if Eckert was even present based upon plaintiff's pleading and response to this motion. Again, contrary to plaintiff's Memorandum of Law which asserts a claim based on Eckert's supervisory role of the medical staff, there is no such claim pled in the amended complaint. Like Defendant Byrnes, the amended complaint does not make any allegations against Defendant Eckert, either on an individual basis or on a supervisory basis. (*Compare* Dkt. No. 100, Mem. of Law at 2 *with* Dkt. No. 50.)

Accordingly, I recommend that the Court grant Defendants Byrnes and Eckert's motion to dismiss with prejudice.[11]

### C.  Defendants LaDue, Loren, and Hanson

Defendants LaDue, Loren, and Hanson have also moved for dismissal arguing that plaintiff has failed to state causes of action against them upon which relief may be granted.

Plaintiff's amended complaint alleges two causes of action based in negligence. (Dkt. No. 50.) Negligence is not a cognizable cause of action in prisoner litigation suits. The Supreme Court has flatly denied that negligence is a basis for a cause of action and recovery in § 1983 cases. *See Daniel v. William*s, 474 U.S. 327, 328, 330-31 (1986). "Where a government official's act causing injury to his life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required." *Id.* at 333 [emphasis in the original]. Because

---

[11] Defendant Byrne makes an additional argument for dismissal on the basis of improper venue. FED. R. CIV. P 12(b)(3). However, the case was transferred from the Southern District of New York to this jurisdiction because this is the proper venue for the majority of defendants. Since the conduct of all defendants, except Byrnes, occurred in the Northern District, this is the proper venue for her as well, pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C.A. § 1367(a).

plaintiff is not entitled to relief for a negligence claim as against state actors under 42 U.S.C. §1983, both the first and second causes of action cannot not survive a motion to dismiss. I therefore recommend that plaintiff's negligence claims be dismissed with prejudice.

**ACCORDINGLY,** it is

**RECOMMENDED** that the Court *sua sponte* **DISMISS** with prejudice the claims against the two John Doe defendants for failure to prosecute; and it is further

**RECOMMENDED** that Defendants LaDue, Loren and Hanson's motion for summary judgment granting them immunity under the Eleventh Amendment for actions in their official capacities (Dkt. Nos. 72-77) be **GRANTED**; that their motion for summary judgment and motion to dismiss for failure to exhaust administrative remedies (Dkt. Nos. 72-77) be **DENIED**; that their motion for summary judgment with respect to the medical indifference claim (Dkt. Nos. 72-77) be **GRANTED**; and that their motion to dismiss with respect to plaintiff's negligence claims (Dkt. No. 72-77) be **GRANTED**; and it is further

**RECOMMENDED** that Defendants Byrnes and Eckert's motion to dismiss for failure to state a cause of action (Dkt. No. 81 ad 79) be **GRANTED** with respect to all claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 982 F.2d 15 [2d Cir. 1989]); 28 U.S.C. §636(b); FED. R. CIV. P.6(a), 6(e), 72.

Dated: April 4, 2005
      Syracuse, New York

George H. Lowe
United States Magistrate Judge